UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| ANITA DICKERSON | CIVIL ACTION |
|---|---|
| VERSUS | No. 07-8153 |
| PROGRESSIVE EXPRESS INSURANCE COMPANY, et al | Section I/3 |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by defendant Mountain Laurel Assurance Company ("Mountain Laurel"). For the following reasons, defendant's motion for summary judgment is **GRANTED.**

## BACKGROUND

This lawsuit arises out of an automobile accident that occurred in Louisiana on January 16, 2007. Plaintiff, Anita Dickerson ("Dickerson"), alleges that she was driving on Chef Menteur Highway in Orleans Parish when Jason Brian Bolling ("Bolling") negligently disregarded a red traffic light, "thereby violently colliding" with the vehicle operated by Dickerson. Dickerson filed this lawsuit, naming as defendants Bolling, Bolling's employers, Florida Tractor Service, LLC and Southern Environmental Services of Florida, and their liability insurer, Progressive Express Insurance Company ("Progressive").[1] Dickerson,

---

[1] Rec. Doc. No. 1-2, paras. I-II; Rec. Doc. No. 13; Rec. Doc. No. 22. Dickerson filed the lawsuit in Orleans Parish Civil District Court. Defendants, citing diversity jurisdiction pursuant to 28 U.S.C. § 1332, removed the lawsuit to this Court. Rec. Doc. No. 1.

1

who was driving her sister's vehicle at the time of the accident,[2] also sued Mountain Laurel Assurance Company ("Mountain Laurel"), the uninsured motorist carrier ("UM carrier") for the vehicle owned by her sister.[3]

Dickerson alleges that as a result of the collision, she suffered a severe strain of the cervical spine and lumbar spine, herniated and/or ruptured discs, multiple abrasions and contusions, a cerebral concussion, internal injuries resulting in a hysterectomy, chest pains, dizziness, headaches, and emotional distress.[4] After paying $12,007 for damage to the vehicle owned by Dickerson's sister, Progressive settled with Dickerson and paid her $287,993, the remaining amount of its $300,000 policy limits.[5]

Mountain Laurel filed this motion for summary judgment, arguing that Tennessee law governs the dispute as to its UM policy, which was issued in Tennessee to a Tennessee resident (Dickerson's sister) for a vehicle "garaged" in Tennessee. Mountain Laurel, as UM carrier, further argues that Tennessee law compels dismissal of Dickerson's claims against it because Dickerson has received insurance proceeds from Progressive in excess of Mountain Laurel's

---

[2] Rec. Doc. No. 51-3, p. 8.

[3] Dickerson's petition named Progressive Insurance Company as her UM carrier. Mountain Laurel answered the petition, stating that Dickerson's petition incorrectly referred to Progressive Insurance Company as her UM carrier. Rec. Doc. No. 18-4.

[4] Rec. Doc. No. 1-2, para. VII.

[5] Rec. Doc. No. 54-2, p. 1; Rec. Doc. No. 51-2, p. 11.

$100,000 policy limits. Dickerson responds that Tennessee law is not applicable to this UM coverage dispute because the accident occurred in Louisiana and Dickerson was a Louisiana resident at the time of the accident.

## LAW AND ANALYSIS

### I. STANDARD OF LAW

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

3

475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

**II. CHOICE OF LAW ANALYSIS**

Because the Court has diversity jurisdiction over this matter, the Court applies state substantive law. *Abraham v. State Farm Mutual Automobile Ins. Co.*, 465 F.3d 609, 610 (5th Cir. 2006). To determine which state law governs this dispute, the Court must apply the choice of law principles of the forum state, in this case Louisiana. *Id.*(citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S

487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)).

The Louisiana Supreme Court recently set forth the proper choice-of-law analysis for automobile accident cases, such as this, that involve parties and UM insurance policies from states other than Louisiana. *Champagne v. Ward*, 893 So. 2d 773, 777 (La. 2005). The court rejected the argument that Louisiana law automatically applies to an out-of-state UM policy merely because the accident occurs in Louisiana and involves a Louisiana resident. *Id.* at 775, 786. Instead, the court held that if Louisiana law differs from the law of a foreign state, a determination as to the governing law must be made in accordance with the Louisiana Civil Code's choice-of-law principles. *Id.* at 787 ("[T]he appropriate starting point in a multistate case...is to first determine that there is a difference between Louisiana's UM law and the UM law of the foreign state, and then to conduct a choice-of-law analysis, as codified by Book IV of the Civil Code.").

### A. Louisiana UM Law v. Tennessee UM Law

In accordance with *Champagne*, the Court must first determine whether the UM law of Tennessee and Louisiana differ. *Abraham*, 465 F.3d at 611; *Rohr v. Allstate Ins. Co.*, No. 06-30970, 2007 WL 3120131, at *3 (5th Cir. Oct. 25, 2007); *Champagne*, 893 So. 2d at 786.

Tennessee UM law requires motor vehicle insurers that issue policies in the state to provide UM coverage. Tenn. Code Ann. §56-

5

7-1201(a). However, Tennessee law also "unambiguously allows an uninsured motorist insurance carrier to limit its liability by offsetting 'all liability and/or primary uninsured motorist insurance policies... applicable to the bodily injury or death of the insured." *Poper v. Rollins*, 90 S.W. 3d 682, 685 (Tenn. 2002)(quoting Tenn. Code Ann. §56-7-1201(d))[6]. The Tennessee Supreme Court has held that when the amount received by the plaintiff exceeds the limits of the UM policy, the UM carrier has no liability to the plaintiff. *Id.* ("[The UM carrier] will pay its insured for damages caused by an uninsured motorist only to the extent that the insured's *total* recoveries with respect to a given injury do not exceed the limits of the policy.").

The Louisiana Supreme Court previously concluded that offset laws are in direct conflict with Louisiana's UM law. *Champagne*, 893 So. 2d at 788 ("Any credit reducing the UM limits by the amount of liability insurance of the adverse driver is clearly contrary to the underinsured motorist protection required by Louisiana's statute."). The policy underlying Louisiana's UM laws "is to promote full recovery for innocent tort victims." *Id.* The Louisiana Supreme Court has noted the factors supporting Louisiana's interest

---

[6] Tenn. Code Ann. 56-7-1201(d) provides:
  The limit of liability for an insurer providing uninsured motorist coverage under this section is the amount of that coverage as specified in the policy less the sum of the limits collectible under all liability and/or primary uninsured motorist insurance policies, bonds, and securities applicable to the bodily injury or death of the insured.

6

in full recovery:

> (1) there are economic interests involved, which include costs of medical care (which are more likely to be paid if there is insufficient insurance); (2) there is significant involvement of the facilities of the Department of Public Safety and Corrections and the judicial system; and (3) the issuing states of the insurance policy often have credit and reduction provisions in their UM coverage, thereby reducing limits and serving to prevent full recovery by the innocent accident victims.

*Id.* at 788. The Louisiana Supreme Court has also recognized the interest of a foreign state, like Tennessee, in regulating "its insurance industry and contractual obligations that are inherent parts thereof" and has explained that "the fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests this is a legitimate public purpose." *Id.* In light of the true conflict between Louisiana and Tennessee UM laws, the Court must conduct a choice-of-law analysis in accordance with the Civil Code.

### B. Balance of State Contacts

Louisiana Civil Code article 3515 provides the general choice-of-law rule that "an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its laws were not applied to that issue." La. Civ. Code Ann. art. 3515.[7] The same principle applies

---

[7] The rule further provides that such a determination should take into account the strength and pertinence of the state policies in light of "(1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing

7

to choice-of-law determinations with respect to contractual obligations such as insurance policies. La. Civ. Code Ann. art. 3537. Article 3537 further defines the analysis, providing:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its laws were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of :(1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

La. Civ. Code. Ann. art. 3537.

In *Champagne*, the Louisiana Supreme Court considered whether to apply Mississippi or Louisiana law to a UM policy issued in Mississippi to a Mississippi resident injured in Louisiana. 893 So. 2d at 774. The court recognized that Mississippi law conflicts with Louisiana policy in that it offsets a UM carrier's liability based on the amount collected from the tortfeasor's liability insurer. *Id.* at 776, 788. The court considered these competing policies in light of various factors: that plaintiff was a Mississippi resident, Mississippi was the place of negotiation and formation of

---

the adverse consequences that might follow from subjecting a party to the law of more than one state."

the insurance policy, the insured vehicle was registered and "garaged" in Mississippi, the UM policy was a Mississippi contract, defendant was a resident of Louisiana, and defendant's insurance policy was issued in Louisiana. *Id.* at 788-89. The court held that Mississippi has "a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana has in providing an insurance remedy to an out-of-state resident who was injured transitorily within the borders of Louisiana." *Id.* at 789.

Mountain Laurel contends that in accordance with the Louisiana Supreme Court's balancing analysis in *Champagne,* the Court should apply Tennessee law to this case even though the accident occurred in Louisiana. According to Mountain Laurel, Dickerson was a Tennessee resident at the time of the accident,[8] Mountain Laurel issued a UM policy in Tennessee to Dickerson's sister, who resided in Tennessee,[9] and plaintiff's sister's vehicle was garaged in Tennessee.[10]

Dickerson does not argue that the UM policy is not a Tennessee

---

[8] In a deposition, Dickerson testified that she evacuated to Tennessee following Hurricane Katrina. She testified that she lived with her sister for some time, but then began renting her own apartment in Tennessee. According to her testimony, Dickerson was visiting her mother in New Orleans at the time of the January, 2007 accident, but she intended to return to Tennessee. Rec. Doc. No. 51-3, p. 3.

[9] Rec. Doc. No. 51-4, p. 1. The policy was issued to Shannon L. Crowden at 6596 Pintail Road, Memphis, TN 38141.

[10] *Id.*

9

contract or that it was not issued to a Tennessee resident for a vehicle garaged in Tennessee. Instead, Dickerson contends that she is a Louisiana resident and that, as such, *Champagne* compels the application of Louisiana law.[11]

Dickerson submits excerpts of her deposition transcript indicating that she moved to Tennessee because of Hurricane Katrina[12] and that she drove to New Orleans in January, 2007 not just to visit her parents, but also "to try to get a job."[13] Dickerson also submits an affidavit, wherein she declares that she "never intended to relinquish her status as a Louisiana resident" and that it was never her intent to permanently remain in Tennessee.[14]

Mountain Laurel directs the Court to deposition testimony that Dickerson had been living in Tennessee for 16 months–from the time she evacuated Louisiana for Hurricane Katrina until the January, 2007 accident[15]–and that Dickerson did not return to Louisiana until

---

[11] In her memorandum in opposition to summary judgment, Dickerson argues that, "**[I]f Petitioner was a Louisiana resident at the time of her accident on January 16, 2007 then, pursuant to the Louisiana Supreme Court's decision in *Champagne*, Louisiana UM law applies to the case at bar.**" Rec. Doc. No. 54-2, p. 3.

[12] Rec. Doc. No. 54-3, p. 1.

[13] Rec. Doc. No. 54-4, pp. 1-2.

[14] Rec. Doc. No. 54-5.

[15] Rec. Doc. No. 51-3, pp. 3, 17.

10

she was evicted from the apartment she had rented in Tennessee.[16] Mountain Laurel also submits evidence that Dickerson had obtained a job as a loan officer in Tennessee, for which she had received three months of training.[17] Finally, Mountain Laurel argues that Dickerson intended to remain in Tennessee based on her testimony that she was visiting New Orleans only for a couple of days and that she planned to return to Tennessee.[18]

Even if Dickerson did not intend for Tennessee to become her permanent home and even if she planned to return to Louisiana in the future, such facts are not sufficient to convince the Court that Louisiana law applies. By asserting that Louisiana UM law applies because Dickerson was a resident of Louisiana at the time of the accident, Dickerson disregards the balancing test set forth in the Civil Code and applied by the Louisiana Supreme Court in *Champagne*.[19] Although plaintiff's "place of domicile or habitual residence" is relevant, the Court is also directed to consider the

---

[16] *Id*. at pp. 15-17.

[17] *Id*. at pp. 3-4.

[18] *Id*. at p. 3.

[19] Dickerson mentions factors other than residence only in a cursory manner towards the end of her motion. Dickerson concludes that Louisiana law should apply because she was a displaced Louisiana resident, the accident occurred in Louisiana, and she received all of her medical treatment in Louisiana. Rec. Doc. No. 54-2, p. 6. Dickerson, however, provides no evidence of her medical treatment. Rec. Doc. No. 54-2, p. 6. Moreover, the fact that her medical treatment occurred in Louisiana is not sufficient to persuade the Court that Louisiana, as opposed to Tennessee, policy would most likely be impaired if not applied. *See Abraham*, 465 F.3d at 613; *Walker v. State Farm Mutual Automobile Ins. Co.*, 954 so. 2d 847, 853-54 (La. Ct. App. 2d Cir. 2007).

place where the contract was negotiated and formed in addition "to the location of the object of the contract." La. Civ. Code Ann. art. 3537; *Champagne*, 893 So. 2d at 781, 789.

Moreover, the United States Court of Appeals for the Fifth Circuit has held that plaintiff's residence alone "is not determinative." *Abraham*, 465 F. 3d at 613 ("While we agree that [plaintiff's] "residence is a factor to be considered in making the choice-of-law determination, it is not determinative."). In *Abraham*, the district court found that a plaintiff, who was seeking to collect benefits for an accident that occurred in Louisiana pursuant to a UM policy issued in Mississippi, was a dual resident of Mississippi and Louisiana. *Id.* at 610. Notwithstanding plaintiff's Louisiana residence and the fact that the accident occurred in Louisiana, the Fifth Circuit held that, "Mississippi-the state where the insurance policy was negotiated and formed, where the insured vehicle was licensed and garaged, and where [plaintiff] had dual citizenship-" had a more substantial interest and connection to the dispute. *Id.* at 614.

An evaluation of Louisiana's interest in promoting recovery and Tennessee's interest in regulating its insurance industry in light of the states' contacts to this dispute leads the Court to conclude that Tennessee law should apply to this dispute. Similar to *Champagne* and *Abraham*, the UM policy in this case was issued in

Tennessee for a vehicle "garaged" in Tennessee.[20] This case adds a unique element, in that plaintiff, who alleges she is a Louisiana resident, is not the policyholder. Instead, the policy was issued to a Tennessee resident, Dickerson's sister.[21] Accordingly, it is likely that the *actual* parties to the contract had reasonable expectations that Tennessee law would apply to any coverage dispute.[22] *See* La. Civ. Code Ann. art. 3515 (providing that courts should consider "upholding the justified expectations of parties" in determining which state law to apply). Although the Court is sympathetic to allegations regarding the extent of plaintiff's injuries, application of Tennessee law will not seriously impair Louisiana's interest in ensuring recovery for the accident victim, given Dickerson's receipt of $287,993 from Progressive. *See Walker*, 954 So. 2d at 853-54(holding that plaintiff's settlement with other insurers "mitigates Louisiana's interest in providing UM coverage for innocent accident victims.").

---

[20] In her application for insurance, Dickerson's sister provided a Tennessee zip code for her the "garaging zip" of her Ford Expedition. Rec. Doc. No. 51-6, p. 1.

[21] Rec. Doc. No. 51-4; Rec. Doc. No. 51-6. In *Palm v. Stewart*, the Louisiana Court of Appeals for the Third Circuit considered a scenario where the injured party was a Louisiana resident and the accident occurred in Louisiana, but the insurance policy was issued in Texas to a Texas resident. 858 So. 2d 790, 792, 794. The court held that Texas' interest is regulating such policies would be "more seriously impaired by the application of Louisiana law." *Id.* at 795.

[22] In fact, the Mountain Laurel policy provides that, "[a]ny disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** residence." Rec. Doc. No. 51-4, p. 24. Dickerson's sister provided a Tennessee address on her application for insurance. Rec. Doc. No. 51-6, p. 1.

For the foregoing reasons, Tennessee's UM law, particularly its provision limiting the liability of UM carriers, governs this dispute. Further, Dickerson's recovery of $287,993 from Progressive exceeds Mountain Laurel's $100,000 UM policy limits and, therefore, Tenn. Code Ann. §56-7-1201(d) precludes Mountain Laurel's liability. *See Poper*, 90 S.W. 3d at 685.[23] Accordingly,

**IT IS ORDERED** that the motion for summary judgment is **GRANTED** and that Dickerson's claims against Mountain Laurel are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, January 14th, 2009.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[23] Moreover, Mountain Laurel's policy similarly limits liability by defining uninsured motor vehicle as one:
> [t]o which a liability bond or policy applies at the time of the accident, but the sum of the limits of liability available under all valid and collectible liability bonds and policies is less than the Limits of Liability shown on the Declaration Page for the coverages under this Part III. Rec. Doc. No.51-4, p. 13.